J.T. GUFFEY *v.* ARKANSAS SECRETARY OF STATE
and ARKANSAS INSURANCE DEPARTMENT,
PUBLIC EMPLOYEES CLAIMS DIVISION

CA 86-5                                    710 S.W.2d 836

Court of Appeals of Arkansas
En Banc
Opinion delivered June 4, 1986

*Gary Eubanks & Associates*, by: *James Gerard Schulze*, for appellant.

*Youngdahl, Youngdahl & Wright, P.A.*, by: *Randall G. Wright*; and *James A. McLarty*, for amici curiae Arkansas State AFL-CIO and Arkansas Trial Lawyers' Association.

*Jerry G. James*, for appellee.

Tom Glaze, Judge. Appellant, J. T. Guffey, appeals from the Commission's order, denying his claim for additional disability benefits. The denial was based, in part, on the Commission's findings that there is no statutory basis for the award of benefits known as "current total disability benefits," and, consequently, that it would no longer award such benefits. The Commission went on to decide that appellant was not entitled to permanent total disability benefits. Appellant raises two points on appeal: (1) whether the Commission erred in finding that the Arkansas Workers' Compensation Law does not provide for awards of current total disability benefits, and (2) whether the Commission erred in deciding the issue of permanent total disability.

Appellant was employed as a maintenance worker for the Arkansas Secretary of State's office when, on July 27, 1981, he injured his right foot in a fall. Temporary total disability benefits were paid from July 28, 1981, through April 26, 1983. Thereafter, a fifty-five percent permanent partial impairment to the right

foot was accepted and paid.

Appellant had two surgeries to his right foot after his July 1981 injury, the last being on September 20, 1984. At a hearing before an administrative law judge on October 26, 1984, appellant contended he was entitled to additional benefits because he had an additional period of temporary total disability from April 26, 1983, until August of 1984. Dr. Thomas, appellant's treating physician, had given appellant an anatomical rating on April 25, 1983, and in a later report dated April 11, 1985, he stated that appellant's healing period had ended approximately on May 1, 1983. Based on this and other testimony, the administrative law judge found that appellant failed to prove he was entitled to additional temporary total disability benefits.

For reversal on the first point, appellant argues that current total disability benefits are authorized by the Workers' Compensation Law, case law, and public policy. We agree.

■ Statutory language clearly provides for awarding total disability benefits after the healing period has ended.[1] Ark. Stat. Ann. § 81-1313(a) (Repl. 1976), reads as follows:

> Total Disability. In case of total disability there shall be paid to the injured employee *during the continuance of such total disability* sixty-six and two-thirds percent (66 2/3%) of his average weekly pay. [Emphasis added.]

Disability is defined in Ark. Stat. Ann. § 81-1302(e) (Repl. 1976) as:

> [I]ncapacity because of injury to earn, in the same or any other employment, the wages which, the employee was receiving at the time of the injury.

These sections clearly establish that an injured worker, who is totally unable to earn in the same or any other employment the wages he or she was receiving at the time of the injury, is entitled to receive benefits during the continuance of that total disability.

---

[1] In *Arkansas State Highway Dept. v. Breshears*, 272 Ark. 244, 613 S.W.2d 392 (1981), the supreme court did clarify the statutory law that *temporary* total disability benefits could not be paid beyond the healing period.

■ Benefits in the form now known as "current total disability benefits" were established by the Arkansas Supreme Court in *McNeely* v. *Clem Mill & Gin Co.*, 241 Ark. 498, 409 S.W.2d 502 (1966). In that case, the court recognized that, in many instances, the benefits for scheduled injuries may have little or no relation to the claimant's period of disability. It upheld the Commission's decision to continue awarding total disability benefits until such time as the extent and duration of the disability could be determined. Part of the court's reasoning was that it was beneficial to both claimant and respondent to pay total disability until such determination could be made. In *Sunbeam Corp.* v. *Bates*, 271 Ark. 385, 386, 609 S.W.2d 102, 103 (Ark. App. 1980), this court upheld the Commission's decision to pay claimant benefits "as long as appellee remains totally disabled." In *City of Humphrey* v. *Woodward*, 4 Ark. App. 64, 628 S.W.2d 574 (1982), we considered the same type indefinite-disability-period as delineated in *McNeely* and *Sunbeam*, and we merely adopted the Commission's description of it, affirming that the claimant was "currently totally disabled" and entitled to benefits indefinitely.

The Workers' Compensation Act has been construed for twenty years as providing for total disability payments beyond the healing period. While neither "current total disability" nor "temporary total disability" are mentioned in § 81-1313(a), the statutory provision providing for total disability, both terms have been defined by case law and employed in order to fulfill the intention of the Act.

The Arkansas Supreme Court held, over forty years ago, that workers' compensation laws were entitled to and have universally received a liberal construction from the courts. *Williams Manufacturing Co.* v. *Walker*, 206 Ark. 392, 175 S.W.2d 380 (1943). "The humanitarian objects of such laws should not, in the administration thereof, be defeated by overemphasis on technicalities—by putting form over substance." *Id.* at 400, 175 S.W.2d at 383.

■ We are committed to a liberal construction of the Workers' Compensation Law and to the rule that it should be interpreted in favor of the claimant when there is doubt as to its meaning. *Sanyo Manufacturing Corp.* v. *Ferrell*, 16 Ark. App.

59, 696 S.W.2d 779 (1985). We, along with the Commission heretofore, have recognized the need, in certain circumstances, for total disability benefits after the healing period is over, *viz.*, in cases where an injured worker cannot, at that time, be determined permanently totally disabled. The fact that the total disability may not last forever is not harmful to the employer or the insurance carrier. *Electro-Air* v. *Villines*, 16 Ark. App. 102, 697 S.W.2d 932 (1985). As was further noted in *Villines*, the cases in which current total disability is awarded are those cases in which the Commission is not quite ready to admit that a claimant will never be able to return to work. In *Villines*, the Commission obviously was hopeful that the claimant would learn to manage her pain and eventually return to the job market.

Because we hold the Commission erred in deciding that it had no legal authority to award current total disability benefits, we reverse and remand in order for the Commission to consider and decide appellant's entitlement to such benefits.

Appellant's final point for reversal is that the Commission erred when it decided the issue of permanent total disability. The parties agree that it was stipulated at the hearing before the administrative law judge that the sole issue was appellant's status from April 26, 1983, until August of 1984. The administrative law judge decided only that issue, ruling appellant was not entitled to additional temporary total disability benefits after April 25, 1983. Nonetheless, the Commission on appeal not only declined to recognize the concept of current total disability, but also it decided the appellant was not entitled to permanent total disability benefits. Here, the appellee argues that while both parties withdrew the permanency issue at the hearing before the law judge, the Commission was within its right to consider that issue inasmuch as appeals to the Commission are *de novo*. Appellee points to medical evidence and appellant's testimony which it suggests support the Commission's finding that appellant is not permanently and totally disabled.

We find no meaningful distinction between the instant case and our decision in *Arkansas Louisiana Gas Co.* v. *Grooms*, 10 Ark. App. 92, 661 S.W.2d 433 (1983). There, we held the Commission erred when it based its decision on a finding of fact which was clearly not in issue or developed by the evidence. The

Commission decided the issue, failing to give the parties any notice of its intent to do so or any opportunity to offer proof on that issue.

The parties here undisputedly agreed not to pursue the permanency issue, and it is left to speculation how the hearing before the law judge would have developed if that issue had been tried. While evidence *was* introduced bearing on the permanency issue, we are unable to conclude—as appellee suggests—that no additional evidence is available which could affect the Commission's finding in this respect. On the record before us, we are unwilling to say that the parties were afforded the opportunity to fully develop the issue concerning permanent total disability.

Reversed and remanded.

MAYFIELD, J., concurs.

MELVIN MAYFIELD, Judge, concurring. I agree that the Commission erred in refusing to consider whether the appellant was entitled to current total disability benefits; however, I put my decision upon a different basis than that of the majority opinion.

As I understand the opinion, the majority agrees with the appellant's argument that the phrase "total disability," found in Ark. Stat. Ann. § 81-1313(a) (Repl. 1976), is properly interpreted to include the concepts of "temporary total disability," "current total disability," and "permanent total disability." Although I would be willing to so interpret the statute, I doubt that view is in keeping with the Arkansas Supreme Court cases of *McNeely* v. *Clem Mill & Gin Co.*, 241 Ark. 498, 409 S.W.2d 502 (1966) and *Arkansas State Highway Dept.* v. *Breshears*, 272 Ark. 244, 613 S.W.2d 392 (1981).

In *McNeely*, the court held that an employee who suffers a scheduled injury "which proves to be totally and permanently disabling" is not confined to the restricted compensation specified for the scheduled injury but is entitled to the "greater benefits provided for total and permanent disability." The opinion concluded as follows:

> The appellees complain of the fact that the commission, in finding this claimant's disability to be total, failed to find that it was also permanent. Instead the commission

said that the duration of the disability is not determinable at this time. Inasmuch as there was substantial evidence that might have sustained a finding of permanency—a fact issue upon which we express no opinion—we fail to see how appellees are hurt by the commission's deferment of this question until the exact extent of the disability might become clearer.

Six years later, the Arkansas Supreme Court again held that a scheduled injury may give rise to an award of compensation for "total disability," and, without any reference to the term "permanent," said the Commission's finding of "total disability" was amply supported by the record. *See Meadowlake Nursing Home v. Sullivan*, 253 Ark. 403, 486 S.W.2d 82 (1972). Then, almost ten years later, in the *Breshears* case, the Supreme Court held that under section 81-1313(a), *supra*, an employee is entitled to receive total disability benefits for that period within the healing period in which the employee suffers a total incapacity to earn wages. The court referred to this as "temporary total disability" and compared it with "temporary partial disability" which is expressly provided for under subsection (b) of section 81-1313. The court also made it clear that the reason it held "temporary total disability" to be limited to the healing period was because subsection (a) is silent on the point, but subsection (c) expressly provides that an employee who sustains a *scheduled* injury is entitled to compensation for the healing period *in addition* to the compensation allowed for the scheduled injury.

It should be noted that in providing for total disability benefits, section 81-1313(a) does not use the terms "permanent" or "temporary." Thus, it may be permissible to also apply the term "current" to the provision for total disability. On the other hand, it may be that the holding in *Breshears* has limited total disability benefits under section 81-1313(a) to (1) where the disability is permanent and, (2) where the disability is temporary—that is, in existence only during the healing period. If this is the meaning of *Breshears*, and since the *McNeely* case was not even mentioned, it seems reasonable to assume that the concluding paragraph in *McNeely* means exactly what it says. In fact, the Arkansas Court of Appeals relied upon that meaning in *Bemberg Iron Works v. Martin*, 12 Ark. App. 128, 671 S.W.2d 768 (1984),

where we said:

>   *McNeely* gave expression to a concept of applied law
>   that remained without a label until *City of Humphrey* v.
>   *Woodward,* 4 Ark. App. 64, 66, 628 S.W.2d 574 (1982),
>   almost 16 years later. In that case, we adopted a phrase
>   used for convenience by the Commission in its opinions and
>   upheld the indefinite benefits of an employee found to be
>   "currently totally disabled." We discussed the develop-
>   ment of this area of the law and observed that
>
>   > now when we speak of total disability, such benefits
>   > may be denominated further in terms of "current"
>   > total, "limited" total or total disability benefits "until
>   > such time as total disability ceases." . . . Obviously, in
>   > making such an award, the Commission remains
>   > hopeful that the claimant's disability is not permanent
>   > and that he will eventually return to work.
>
>   > In the instant case, we agree with appellee's argument
>   > based upon *McNeely, supra,* and *Taylor* v. *Pfeiffer Plbg.
>   > & Htg. Co.,* 8 Ark. App. 144, 648 S.W.2d 526 (1983), that
>   > a claimant's benefits for a scheduled injury are not limited
>   > to the benefits provided by Ark. Stat. Ann. § 81-1313(c)
>   > when the scheduled injury renders the claimant totally
>   > disabled. Here, the Commission found that appellee's
>   > injuries rendered him totally disabled. The fact that the
>   > Commission found the total disability to be "currently"
>   > total seems to be no different from the situation in
>   > *McNeely.* We fail to see how the appellants are hurt by the
>   > possibility that the total disability in the instant case may
>   > not last forever.

See also the recent case of *Electro-Air* v. *Villines,* 16 Ark. App.
102, 697 S.W.2d 932 (1985), which relied upon *Bemberg.*

The view of the Commission in the past, as to the application
of the concept of current total disability, is revealed in the
Commission's opinion in the instant case by the following
quotation from a prior (unpublished) opinion written by a former
chairman of the Commission.

It is perhaps appropriate to observe at this point that the

Commission itself for the past few years has been increasingly applying the concept of current total disability (or something akin thereto without using that particular terminology) without really defining the doctrine, without stating its specific statutory authorization, and without describing its parameters. The increasing utilization of this concept, be it a judicial hybrid or whatever, has probably been brought about at least in part by the Arkansas Supreme Court decision in *Arkansas State Highway Department* v. *Breshears*, 272 Ark. 244, 613 S.W.2d 392 (1981), absolutely restricting temporary total disability to the healing period as defined by Ark. Stat. Ann. § 81-1302(f). Oftentimes the Commission reviews cases in which the healing period has ended, the claimant is still totally disabled from working, but because of the claimant's age or the nature of his disability, the Commission is reluctant to indelibly stamp the claimant permanently as well as totally disabled. Experience with virtually thousands of cases over the years has taught that even though the underlying condition may have stabilized and the claimant may have reached the maximum *medical* improvement, time itself has healing properties which occasionally return a once totally disabled worker to productive gainful employment.

The reasons for abandoning the use of the concept of current total disability as expressed in the Commission's opinion in the instant case, written by the present chairman, seem to be that there is no statutory basis for it, plus an apparent agreement with the reasoning stated in the dissenting opinion in *Sunbeam Corp.* v. *Bates*, 271 Ark. 385, 609 S.W.2d 102 (Ark. App. 1980).

Under the statutory interpretations of the Arkansas Supreme Court, I agree there is no statute expressly authorizing the application of the concept of current total disability, but I also believe the application of that concept is *not prohibited* by statute. Therefore, I see no valid objection to the continued application of the holding in *McNeely*, which is based on the idea that employers, and their insurance carriers, cannot complain of the fact that the duration of the total disability found by the Commission was not determinable at that time. Although the issue is not before us, the same idea would seem to be applicable to

an employee—as long as he is receiving current total disability benefits he should have no reason to complain that they may not last forever.

Except for the lack of a statutory basis, the objections to the concept of current total disability expressed in the dissenting opinion in *Sunbeam* are simply evaluations of conflicting considerations. Indeed, the dissent states that "in a way" the majority decision "makes good sense." One objection expressed is that employers might try to "ride herd" on former employees found to have a "limited" total disability, and if the employee obtains "some sort of job" he would be "hauled back before the Commission for reevaluation." In that event, I would think the burden would be on the employer to establish that the employee was no longer totally disabled. This is the rule where an insured has been found totally disabled under the provisions of an insurance policy and the company contends the disability has ended, *DeSoto Life Insurance Co.* v. *Jeffett*, 212 Ark. 798, 207 S.W.2d 743 (1948), and the situations are certainly similar. This rule, coupled with the likelihood of having to pay the fee of claimant's attorney as a result of controverting the continuance of the total disability status, would serve to prevent the employer from abusing the right of hauling the employee back before the Commission. But, in any event, the employee in the instant case admits that the employer would have the right to future hearings to determine whether the total disability still existed.

It should also be noted that an amicus curiae brief filed by the Arkansas State AFL-CIO and the Arkansas Trial Lawyers' Association strongly argues that the Commission "erred in abolishing a twenty year practice and policy of awarding disability benefits to injured employees who are unable to return to the workforce after the healing period has ended." Stating that many of these employees "expect that in the near future they will adjust to the pain and discomfort and rejoin the workforce," the brief contends that they should not be refused total disability simply because the Commission is not willing to make a finding that the disability will be permanent.

I concur in the result of the majority opinion and agree that this case should be reversed and remanded to the Commission for

64

a rehearing and determination on the issue of current total disability.